### State of Vermont v. Steven Wayne Zehner

[453 A.2d 1126]

No. 526-81

Present: Billings, Hill, Underwood and Peck, JJ., and Daley, J. (Ret.), Specially Assigned

Opinion Filed November 2, 1982

252

*Raymond G. Bolton,* Bennington County State's Attorney, and *William D. Wright,* Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

*Witten & Carter, P.C.,* Bennington, for Defendant-Appellant.

**Billings, J.** The defendant was convicted of breaking and entering in the nighttime with the intent to commit larceny. 13 V.S.A. § 1201. The only issue on appeal is whether the defendant's oral and written confession, without which the State could not prove its charge, was involuntary.

On the evening of December 7, 1980, three chain saws were stolen from a barn in Pownal, Vermont. The next day a state police detective investigating the crime went to the defendant's residence and questioned the defendant, the defendant's wife, then eight and a half months pregnant, his brother and two other individuals. All parties denied any knowledge of the theft. The officer left the Zehner residence, and, following another lead, interviewed a suspected female accomplice who implicated all the previously questioned individuals. The police detective then returned to the Zehner residence and told the defendant the following: that he had information that on the previous night the defendant had used a car belonging

to the suspected female accomplice, that the defendant had come home with three chain saws, that he and his brother were running the saws at 5:30 that morning, and that the defendant had asked the female accomplice if she knew of anybody who wanted to buy the chain saws. The defendant's only response was to shrug his shoulders. The officer then advised the defendant that although he "wasn't interested in charging everybody in the world" with possession of the chain saws, he had enough information to charge the defendant, his wife, his brother, and the female accomplice with possession of stolen property. The officer stated that he just wanted "to clean up the actual burglary."

As a result of this conversation the defendant advised the officer that "he didn't want to get anybody else in trouble," and that he would talk to the officer about the incident. The officer then orally gave the defendant the *Miranda* warnings and transported him to the state police barracks. There, after being given the *Miranda* warnings a second time, the defendant executed a standard *Miranda* waiver form. The defendant then gave the officer an oral statement which amounted to a confession; this was subsequently reduced to writing and signed by the defendant. This confession, found to be voluntary at a suppression hearing, was used at trial over defendant's objection. On appeal the defendant argues that the confession was coerced, as he reasonably perceived that had he not admitted guilt, his pregnant wife would have been charged with the crime.

"A criminal defendant is denied due process of law if his conviction is founded in whole or in part upon an involuntary confession regardless of its truth or falsity, and regardless of whether there is other evidence sufficient by itself to support a conviction." *State* v. *Lapham,* 135 Vt. 393, 400, 377 A.2d 249, 253 (1977) (citing *Jackson* v. *Denno,* 378 U.S. 368, 376 (1964)). See *State* v. *Badger,* 141 Vt. 430, 450 A.2d 336 (1982). In order to be voluntary, a confession must be the product of a rational intellect and the unfettered exercise of free will. *Malloy* v. *Hogan,* 378 U.S. 1, 8 (1964). A law enforcement official may not use threats, improper influence, or physical or psychological pressure to extract a confession. *Culombe* v. *Connecticut,* 367 U.S. 568, 602 (1961); *Bram* v.

*United States,* 168 U.S. 532, 542–43 (1897). "The ultimate question is whether the pressure, in whatever form, was sufficient to cause the [defendant's] will to be overborne and his capacity for self-determination to be critically impaired." *Ferguson* v. *Boyd,* 566 F.2d 873, 877 (4th Cir. 1977) (citing *Culombe* v. *Connecticut, supra*). In order to make this determination, a reviewing court must examine the totality of the circumstances, *Mincey* v. *Arizona,* 437 U.S. 385, 401 (1978); *Haynes* v. *Washington,* 373 U.S. 503, 513 (1963), bearing in mind that the decision of the defendant "to shoulder the entire burden [of fault] in order to exculpate someone else does not, of itself, render his confession involuntary and invalid." *Vogt* v. *United States,* 156 F.2d 308, 312 (5th Cir. 1946).

On the facts before us, we can find no threats or promises made by the officer. Rather, he merely indicated to the defendant that he had already gathered sufficient evidence to charge the defendant, his wife, his brother, and their female friend with possession of stolen property. The defendant's wife was not specifically singled out. The officer advised the defendant that he wished to "clean up the burglary" without having to press charges against all the potential parties. At the time of this discussion, the defendant was at his home, was not in custody, and had not been subjected to interrogation. The defendant, motivated perhaps by his concern for his wife, brother and friend, stated that "he didn't want to involve anyone else," and agreed to accompany the officer to the police barracks.

■ "The line between proper and permissible police conduct and techniques and methods offensive to due process is, at best, a difficult one to draw, particularly in cases . . . where it is necessary to make fine judgments as to the effect of psychologically coercive pressures and inducements on the mind and will of an accused." *Haynes* v. *Washington, supra,* 373 U.S. at 515. However, a review of the totality of the circumstances in the instant case convinces us that the officer's conduct was not so egregious as to overbear the will of the defendant. The defendant's decision to confess was based not on threats or coercion, but rather upon his own free will. The confession was, in fact, voluntary.

The trial court bases its ruling of admissibility on the so-

called collateral benefit rule, *State* v. *Blair*, 118 Vt. 81, 88, 99 A.2d 677, 682 (1953); see *State* v. *Tatro*, 50 Vt. 483, 490 (1878). We do not reach this issue because of the disposition on a review of the totality of circumstances.

*Affirmed.*