Filed 10/23/25

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-04273

**Juliet Stephens v. Shannon Gilmour**

# ENTRY REGARDING MOTION

Title:        Motion; Motion; Motion; Motion in Limine; Motion in Limine; Motion in Limine; Motion to Seal; Motion to Enforce Motion For: to allow Jury to submit questions to witnesses; Motion For: for permission for support person for minor witness; Motion For: for accommodation of child witness; to Exclude Irrelevant and Prejudicial Evidence; to Exclude Evidence re Mental Health History; to Admit Evidence of Plaintiff's Retaliatory Conduct; to File Medical Records Under Seal; Emergency Motion to Enforce Court Order and Redact Minor's Name from Opposing Counsel's Exhibits (Motion: 22; 23; 24; 25; 26; 27; 28; 29)
Filer:        Shannon Gilmour; Shannon Gilmour; Shannon Gilmour; Claudine C. Safar; Claudine C. Safar; Shannon Gilmour; Shannon Gilmour; Shannon Gilmour
Filed Date:     October 06, 2025; October 06, 2025; October 07, 2025; October 10, 2025; October 10, 2025; October 10, 2025; October 17, 2025; October 22, 2025

The motion is GRANTED IN PART and DENIED IN PART.

Parties have filed eight pre-trial/motions in limine in anticipation of the scheduled jury trial in this matter. The Court will address each motion separately and in turn in this Order, but the Court will begin with a brief review of the procedural history of the present action as there have been over 20 motions made during the course of this litigation that have altered what claims remain before the Court.

## Procedural History

The present matter arises from a residential tenancy created between Plaintiff (Landlord) and Defendant (Tenant) regarding the rental of two rooms at Plaintiff's property at 15 Phelps Street in Montpelier, Vermont. In October 2024, Plaintiff sought to terminate Defendant's tenancy pursuant to 9 V.S.A. § 4476(h), which covers the provisions for terminating a tenancy created when landlord and tenant occupy the same dwelling space. When Defendant did not vacate, Plaintiff brought the present case for ejectment on October 24, 2025, pursuant to 9 V.S.A. § 4468. Plaintiff seeks the remedy of ejectment under 12 V.S.A. § 4761.

Plaintiff initially brought this ejectment action against both Defendant and Defendant's minor daughter, M.G., who resides with her mother at 15 Phelps Street. On November 11, 2024,

Defendant filed an answer and counterclaims on behalf of herself and her daughter. The counterclaims for both Defendant and M.G. included the following:

1) Breach of the implied warranty of habitability for lack of smoke detectors and carbon monoxide detectors.
2) Breach of the warranty of habitability regarding mold and smells from the upstairs bathroom.
3) Retaliatory Eviction under 9 V.S.A. § 4465 based on the following alleged facts:
   a. Plaintiff's failure on 9/9/24 to give Defendant a 60-day notice of rent increase;
   b. Defendant's request for smoke and carbon monoxide detectors on 9/10/24;
   c. Plaintiff's threatening statements on 9/10/24;
   d. Defendant's contacting Vermont Tenants, Inc. on 9/14/24;
   e. Defendant's complaint to a government regulatory entity on 9/14/24; and
   f. Plaintiff's changing of the terms of the verbal agreement between the parties to extend the written lease.

These claims, in respect to Defendant, have survived the various motions to dismiss, and remain active counterclaims against Plaintiff's ejectment claim.

In addition to the surviving counterclaims, Defendant brought the following counterclaims that have been dismissed by the Court in previous rulings:

4) Intentional infliction of emotional distress (IIED) based on:
   a. Plaintiff's initial failure to install smoke and carbon monoxide detectors and failure to install them when asked; and
   b. Plaintiff's attorney's initial statements, actions, and filings against Defendant, and Plaintiff and her attorney's decision to include Defendant's minor child, M.G. in the complaint as a separate party.
5) Defamation based on Plaintiff's inclusion of M.G. as a separate party in the complaint for ejectment.
6) Abuse of process based on Plaintiff's inclusion of M.G. as a separate party in the complaint for ejectment.

On January 8, 2025, the Court issued an Order on the parties' pending motions. In that Order, the Court ruled as follows. First, it gave Defendant 30 days to obtain counsel for M.G. pursuant to *Estate of Snelgrove v. LeBlanc*, 2023 VT 58, ¶¶ 6–7, 218 Vt. 636. Second, it denied Defendant's motion to join Attorneys Safar and Stafford to the present matter pursuant to V.R.C.P. 19. Third, it ordered Plaintiff to show cause as to why M.G. should not be dismissed as a party. Fourth, it dismissed Defendant's counterclaims for intentional infliction of emotional distress and defamation. The Court found that the facts plead for both IIED claims did not rise as a matter of law to the type of outrageous and extreme actions on which such a claim must be premised. The Court dismissed the defamation claim as it belonged to M.G. and not to Defendant. Both dismissals were pursuant to V.R.C.P. 12(b)(6). Fifth, the Court denied Plaintiff's motion for judgment on the

pleadings. Sixth, the Court granted Plaintiff's Rule 12(f) motion to strike the portions of Defendant's answer and motion to join that discussed Plaintiff's mental health history in four places. The Court sealed the filings and required Defendant to refile versions of both filings with the identified passages removed or redacted. No other sanctions were awarded.

On April 17, 2025, the Court issued a second Order that addressed the subsequent motions and developments in the case. The Court made the following rulings. First, it recognized that Plaintiff had sought to dismiss her claims against M.G. in February of 2025 and granted the dismissal of these claims under V.R.C.P. 41(a)(3). Second, the Court granted permission for Attorney Anderson to enter a notice of appearance on behalf of M.G., even though the appearance occurred outside of the Court's January 30-day deadline. The Court denied Plaintiff's motion to dismiss M.G.'s counterclaims pursuant to V.R.C.P. 12(b)(6), but the Court dismissed M.G.'s counterclaims and M.G. as a party because of the delay that these claims posed to the central claims of the case. The Court invoked V.R.C.P. 1 and its discretionary authority to control its docket, preserve judicial resources, and ensure efficient disposition of cases. *In re Snowstone, LLC Act 250 Jurisdictional Opinion*, 2021 VT 72A, ¶ 24, 216 Vt. 216. The Court will further note that this ruling followed the dismissal of Plaintiff's claims against M.G., which removed any compulsory counterclaim issues under V.R.C.P. 13. *Letourneau v. Hickey*, 174 Vt. 481, 481–82 (2002) (mem.). Finally, the Court granted Plaintiff's motion to set this matter for trial at the Court's next available date.

On July 11, 2025, the Court issued a third Order. This decision dismissed Defendant's abuse of process counterclaim for similar reasons to its prior decision to dismiss Defendant's defamation claims—namely that the claims belonged to M.G., and they were hers alone to assert.

On August 8, 2025, the Court issued a fourth Order addressing three motions by Defendant to take judicial notice and admit (1) Vermont statutes and (2) two voice recordings. The Court denied the first request as Vermont statutes are not evidence but explained that both parties may argue in reliance on them. The Court denied the second motion in two respects. First, it did not rule that the recordings were admissible, but it denied Plaintiff's request to rule them per se inadmissible. Instead, the Court ruled that the admissibility of such recordings would depend on whether a sufficient foundation could be established, including relevance and reliability, and whether at such time of admission the prejudice outweighed the evidentiary value of the exhibits. *State v. Williams*, 2010 VT 77, ¶ 11, 188 Vt. 405.

In addition to these motions, Defendant filed several motions for interlocutory appeal. These motions were denied by this Court on August 25, 2025, and by the Vermont Supreme Court on October 13, 2025.

## Current Motions in Limine

The parties have filed eight pre-trial motions seeking various accommodations, rulings, and processes for the upcoming jury trial presently set for October 27 and 28, 2025.

1. *Motion to Allow Jury to Submit Questions (Motion #22)*

Defendant has requested that the Court permit jurors to submit questions to each witness. Plaintiff does not oppose this request.

Under Vermont caselaw, it is in the discretion of the trial court to allow jurors to pose questions to the witnesses. *State v. Doleszny*, 2004 VT 9, ¶ 34, 176 Vt. 203. The procedure for such questioning is laid out in *Doleszny* as follows:

> (1) the jurors must submit the proposed questions to the judge and be made part of the record; (2) the judge must disclose the proposed questions to the parties and give them the opportunity to object or request the question be narrowed or rephrased; and (3) the judge must rule on each proposed question on the record, allowing, rejecting or modifying the question. The procedures should be explained to the parties and jurors at the commencement of the trial.

*Doleszny*, 2004 VT 9, at ¶ 34. The Court will grant this request and will incorporate the procedure of *Doleszny* into its preliminary jury instructions. The Court will also work with staff to develop a protocol for how such questions will go on the record in a manner that will look to minimize the time and delay associated with this process. In allowing this process, the Court does not adopt or endorse Defendant's reasoning for the request. Instead, the Court invokes its discretion to allow such questions because it finds that this request can be managed with the limited number of witnesses in the parties' witness lists, the fact-specific nature of the claims, and the apparent lack of any prejudice from adopting such a process. The request for including juror questions is **Granted.**

2. *Allowing Support Person for M.G. (Motion #23)*

Defendant requests permission for a support person, Tracy Stober, to be present in the Courtroom for Defendant's daughter M.G. Specifically, Defendant asks that Ms. Stober be permitted to provide childcare and supervision for M.G. during the trial, to sit in a place where she can have eye contact with M.G. during M.G.'s testimony, and to accompany M.G. to and from the Courtroom. Plaintiff does not directly oppose these steps but more generally opposes M.G.'s testimony. The Court will address those broader issues as they are presented in Plaintiff's motion in limine. For the purposes of the present motion, there is no restriction from the Court on Ms. Stober's ability to sit with or accompany M.G. throughout the trial with the following clarifications.

First, M.G., as a witness, will likely be sequestered until her testimony. That means she will have to sit outside the Courtroom until she is called to testify. During that time, Ms. Stober is free to sit with and accompany M.G. and does not need permission from the Court to do so.

Second, if and when M.G. is called to testify, she will, like all witnesses, be directed to sit in the witness stand. This seat faces the jury and the public portion of the Courtroom. Ms. Stober is welcome to sit in the public portion of the Courtroom but may not sit with M.G. or enter the area where the parties and their attorneys sit. It will be up to Ms. Stober to select a seat in the public

portion of the Courtroom as there is generally no reserved or assigned seating, but nearly every part of the public section shares an unobstructed view of the witness stand.

Third, when M.G. has completed her testimony, she, like all other non-party witnesses, may remain in the Courtroom but will be obligated to sit in the public portion of the Courtroom where Ms. Stober is free to sit with her. *Huminski v. Corsones*, 396 F.3d 53, 80–85 (2d Cir. 2005) (individuals enjoy a first amendment right to access state courthouses).

The Court will remind the parties that anyone's presence or location in the Courtroom will depend upon their decorum and respect for the process. If any individual's presence becomes disruptive, the Court has the inherent authority to control the Courtroom to ensure that the judicial process is not disrupted. *Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir.1997) (describing a judge's role to ensure that trials are not disrupted and to maintain "proper order and decorum").

For these reasons, Defendant's Motion to allow a support person for M.G. largely asks for permission where none is needed. As such the motion as understood by the Court is **Moot**.

3. *Accommodations of a Minor Witness (Motion #24)*

Defendant seeks five accommodations from the Court related to M.G.'s anticipated testimony. Plaintiff continues her general objections.

Defendant requests that if and when M.G. testifies that she be allowed the following: (1) Permit Tracy Stober to be present in the Courtroom as a support person for M.G. when she testifies; (2) Give M.G. breaks as needed; (3) Allow Defendant to introduce M.G.'s written statement; (4) Permit the use of the written statement in lieu of testimony; and (5) Require an age-appropriate cross-examination.

Defendant's first two requests fit within the existing framework of a jury trial. The first concerning Ms. Stober's presence in the Courtroom was addressed above. She may be present when M.G. testifies, but she must sit in the public portion of the Courtroom. The second concerns requests for reasonable breaks. The Court generally allows reasonable breaks in testimony where needed, but such reasonableness cannot be determined in advance and will have to be addressed during trial.

As to the use of M.G.'s written statement, the Court begins its analysis by looking to the document in question. While Defendant's motion does not identify the specific written statement, the Court has reviewed the exhibits, and the sole document that appears to fit the description is what Defendant has labeled Exhibit BF. This exhibit is a 17-page affidavit, although the format does not strictly follow what an affidavit would contain: it has both traditional affidavit provisions along either a section of questions and answers that have been "Edited for Court Presentation" as well as a "personal statement" section that purports to be "Verbatim, Unedited." The document is first and foremost a hearsay document in that it is an "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

asserted." V.R.E. 801(c). Under Rule 802, hearsay is not admissible except as the rules of evidence or procedure may permit.

Therefore, the Court begins with the understanding that the document sought to be admitted is not admissible under the rules of evidence.

Defendant seeks to use the affidavit in two ways through her motion. In the first instance, she seeks to introduce the statement as an exhibit and in the second instance use it in lieu of M.G.'s testimony if M.G. is unable to testify. Both propositions are inconsistent with the rules as to trial testimony and the use of out-of-court statements as exhibits.

A witness can only testify from his or her personal knowledge of the relevant matter. V.R.E. 402, 602. This knowledge is usually established through testimony. V.R.E. 602. Each party is responsible for securing the attendance of their witnesses to testify at trial. *In re Odessa Corp.*, 2006 VT 35, ¶ 17, 179 Vt. 640. Under Rule 43, "the testimony of witnesses shall be taken orally in open court, unless otherwise provided." V.R.C.P. 43(a). Together, these rules place an emphasis on live testimony, particularly in trials, by witnesses. *Nichols v. Brattleboro Retreat*, 2009 VT 4, ¶ 6, 185 Vt. 313 ("The preference for live, in-court testimony is well settled in our jurisprudence."); see also *Simpson v. Rood*, 2003 VT 39, ¶ 8, 175 Vt. 546 (mem.) (finding error where trial court allowed telephonic testimony from witness without agreement by the parties).

Against this general rule, there are limited exceptions. One of these exceptions comes under Rule 32, which allows either party to use a deposition "for the purpose of contradicting or impeaching the testimony of deponent as a witness or for any other purpose permitted by the Vermont Rules of Evidence." V.R.C.P. 32(a)(1); see also *Nichols*, 2009 VT 4, at ¶ 6. Another is found under Vermont Rule of Evidence 613(b), which allows the admission of prior inconsistent statements by a witness. As well, Rule 801(d) establishes that a prior statement may be used to demonstrate a witness's inconsistency or consistency or when it constitutes an admission by a Party-opponent.

M.G.'s affidavit does not fit any of these exceptions at this time.[1] Given this lack of admissibility, the Court will not permit the affidavit to be admitted or to have M.G. use it in lieu of testimony. These requests are **Denied.**

As to Defendant's request that M.G. be subject to age-appropriate cross-examination, Defendant does not specify what such a cross-examination would entail. The Court generally grants parties the leeway to conduct direct and cross-examinations as they choose. In this respect, the

---

[1] While Rule 801(d)(1)(B) allows prior consistent statements, they can only be offered "to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive." V.R.E. 801(d)(1)(B). The U.S. Supreme Court has held that only statements that predate the alleged motive to lie, truly rebut the charge of improper influence or motive required by the Rule. *Tome v. United States*, 513 U.S. 150, 167 (1995). Given that M.G.'s affidavit was signed on October 17, 2025, the document cannot meet the standard of *Tome* and limitation of Rule 801(d)(1)(B), regardless of the foundation.

Court will not rule on how either party should conduct their examinations in advance of trial but will defer any ruling on the scope and nature of the cross-examination until trial begins and the scope of M.G.'s direct examination is established. *State v. Williams*, 2010 VT 77, ¶ 11, 188 Vt. 405.

For these reasons, Defendant's motion for accommodations is **Denied** as to the admission and use of M.G.'s affidavit. It is **Moot** regarding allowing Ms. Stober as a support person and taking breaks as necessary since these practices are already allowed. The issue of M.G.'s cross-examination is **Deferred** until trial.

4. *Plaintiff's Motion in Limine (Motion # 25)*

Plaintiff seeks in her motion in limine to prevent Defendant from having M.G. testify, from having Attorney Safar testify, and from introducing testimony regarding the dismissed abuse of process claims. Defendant objects to this motion on the grounds that a prior ruling by the Court constituted a waiver of any objection to M.G. testifying and that Attorney Safar's testimony is critical to her retaliation claim.

"A motion in limine is a useful device for limiting the issues and evidence prior to trial where that is possible." *State v. Dubois*, 150 Vt. 600, 602 (1988). A motion in limine is necessarily limited and must be used, if at all, as more of a scalpel than a shotgun. *Id.* In other words, a motion in limine is best used to address a specific and discrete issue and not for broader and sweeping rulings that may depend on the state of evidence at the time of trial and when admission is sought. *Id.* "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F.Supp.2d 179, 181 (S.D.N.Y. 2001).

In this case, the relief sought falls into two categories. First, Defendant's opposition makes plain that she seeks to adduce evidence and testimony from M.G. and Attorney Safar regarding Plaintiff's decision to include Defendant's daughter as a party to the case.

Defendant's argument demonstrates that she has sought to reframe the issue that Plaintiff initially included M.G. as a party as part of her retaliation counterclaim. Notwithstanding, these facts are not relevant to the retaliation claim for two important reasons.

First, Defendant did not include service on her daughter as part of her November 11, 2024, counterclaim for retaliation. As noted above, Defendant listed six bases for her retaliation claim. None of them includes the post-termination decision to serve M.G. Defendant has not put Plaintiff on notice that she intended to include this issue as a part of her retaliation claim, and it would be prejudicial to include it now. *In re Waitsfield-Fayston Telephone Co., Inc.*, 2007 VT 55, ¶ 12, 182 Vt. 79 ("Failure to plead a claim means that the claim is not in the case.").

Second, the nature of a retaliation claim is focused on whether the landlord has either changed the terms of a rental agreement or threatened or brought an action against a tenant who has taken action consistent with one of the three protected categories. 9 V.S.A. § 4465(a); see also *Houle v. Quenneville*, 173 Vt. 80, 87–88 (2001). As the Vermont Supreme Court has noted, "Vermont's retaliatory eviction statute contemplates that the tenant's protected activity will precede the

landlord's retaliatory action." *Houle*, 173 Vt. at 90. Therefore, the service of and inclusion of M.G. as a party is irrelevant to the retaliation claim.

In the alternative, Defendant also seeks to put this evidence forward in support of her Breach of Habitability claim to show that Defendant's failure was willful and intentional. This contention is not logically connected. The breach of warranty claim is premised on the allegations that Plaintiff did not have smoke detectors and carbon monoxide detectors installed at the start of Defendant's tenancy and that Plaintiff did not install them in a timely manner. Whether Plaintiff included M.G. as a party does not make the question of whether she willfully failed to install the detectors more or less true.

Finally, Defendant also contends that this testimony will establish her claim for punitive damages and for attorney liability. Neither of these claims are before the Court, and therefore they cannot provide a basis for admissibility. *In re Waitsfield-Fayston Telephone Co, Inc.*, 2007 VT 55, at ¶ 12. Furthermore, Attorney Safar is not a party, and any claims that Defendant may have against Attorney Safar are also not before the Court in this trial.

For these reasons, the Court **Grants** Plaintiff's motion in limine regarding any testimony about the inclusion of M.G. as a party to this lawsuit and the process of serving her the complaint. Such testimony is not relevant to any surviving claims that are presently before the Court and within the scope of the present trial. Given that this area of testimony is the only testimony sought from Attorney Safar, the motion in limine regarding calling Attorney Safar as a witness is **Granted.** Defendant may not call Attorney Safar as a witness.

As to the second category, M.G.'s general ability to testify, Defendant notes that M.G. lived in the house at 15 Phelps Street at all relevant times and was a witness to the incidents and facts that make up Defendant's remaining counterclaims, regarding retaliation and habitability. This proffer suggests that M.G. has personal knowledge of the facts underlying these claims. For this reason, the Court **Denies** Plaintiff's request to outright bar M.G.'s testimony. At the same time, the Court will note again that M.G. is not a party to this case, and any damages that she claims to have suffered or any opinions that she may have about the process are not relevant to the present claims. Her testimony will be circumscribed by V.R.E. 402 and 602, which require a witness to testify about their personal knowledge of what they witnessed to the extent that such personal observations are relevant to the claims before the Court.

In summary, the Court **Grants** Plaintiff's motion in limine **in Part.** Neither party may offer testimony regarding M.G.'s inclusion as a party in this case or the service of process that she received as it is not relevant to the remaining claims. It is also **Granted** as to the testimony of Attorney Safar, who shall not be called as a witness. It is **Denied in Part** to the issue of M.G.'s testimony as she may testify about her personal observations and knowledge.

5. *Exclusion of Mental Health History (Motion #26)*

Plaintiff has also filed a motion in limine seeking to exclude any testimony regarding her mental health history. Plaintiff's basis for this motion is twofold. First, she contends that her mental health is not relevant to the claims. Second, she contends that whatever minimal relevance is strongly outweighed by the prejudicial effect. She notes that the Court previously granted her motion to strike Defendant's references to her mental health in her answer as more prejudicial than probative.

Defendant does not dispute this motion and contends that she has complied with the Court's prior order.

Based on this, the Court **Grants** Plaintiff's motion. Defendant may use the properly redacted and re-filed exhibits and may not reference or make allegations regarding Plaintiff's mental health history at trial.

6. *Evidence of Retaliatory Conduct (Motion #27)*

Defendant's next motion concerns various areas of testimony and evidence for which she seeks a preliminary ruling of admissibility. These include: (A) a list of alleged protected activity from September 14th to October 24th, 2024; (B) facts regarding the complaint and service brought against M.G.; (C) emails with Attorney Safar; and (D) the Court's destruction Defendant's exhibits.

Plaintiff opposes categories (B) and (C). Plaintiff notes that service of the complaint on M.G. and including her in the original complaint is not relevant to the claims before the Court. Plaintiff notes that the evidence sought in category (C) should be excluded as either an offer of settlement under V.R.E. 408 or irrelevant to the present claims.

The Court agrees with Plaintiff on both counts. The evidence of M.G.'s inclusion as a party was addressed above. The Court finds that the preliminary conversations between Defendant and Attorney Safar fall under the confidentiality provisions of Rule 408, which generally makes any communication made in settlement negotiations inadmissible in relation to liability and damages. As to the remaining communications, the Court does not find them to be relevant as they concern the parties' ongoing, tense cohabitation and do not make any of Defendant's counterclaims more or less true. For this reason, the Court **Denies** Defendant's Motion to admit Categories (B) and (C) as they are inadmissible under Rules of Evidence 402 and 408.

As to category (A), the Court will not address the admissibility of these facts at this time. The facts in category (A) appear to have some relevance to the claims and counterclaims, but as the Court has noted in this decision, issues of admissibility are best addressed at trial. *State v. Williams*, 2010 VT 77, ¶ 11, 188 Vt. 405.

Similarly, the Court will not address the admissibility of the documents listed in Category (D) as Defendant will have to lay a foundation and establish the relevance of each exhibit unless the parties can stipulate to admissibility.

This last issue appears to have arisen, in part, because Defendant filed original paper copies with the Court as part of her earlier filings, and the Court, consistent with Vermont Rule of Electronic Filing 12, destroyed the paper copies once they were scanned and entered into the electronic filing system. V.R.E.F. 12(a) and (b), rptr n. (explaining that the electronic file is the official record, that parties should not file originals that they wish to preserve, and that "The paper document may be scanned and destroyed and, thus, become unavailable to the filer in the future."). The Court will note that Rule of Evidence 1003 allows that a duplicate of an original document is admissible to the same extent as the original, subject to the same objections that the original might have as to authenticity or the extent that admission of a duplicate would be unfair. V.R.E. 1003.

For these reasons, Defendant's motion is limine is **Denied at this time** for the reasons stated.

7. *Motion to File Medical Records under Seal (Motion #28)*

Defendant has filed a motion to file medical records for M.G. under seal. This motion was filed after the Court-imposed deadline for pre-trial filings. To date, the Court does not have a response to this motion from Plaintiff.

Given the sensitive and personal nature of the medical records, the Court will **Grant** Defendant's motion in part. The Court will allow these records to be filed under seal. In doing so, the Court makes no ruling on the admissibility of these records as M.G. is not a party to the present case. Her health is not an issue in any of the claims, and any claim for impacts to M.G.'s health are M.G.'s claims to assert, and it is not for Defendant to raise.

Therefore, the Court will address these records with parties as part of the pre-trial conference in this matter on October 27, 2025.

8. *Motion to Enforce (Motion #29)*

Defendant filed a motion seeking sanctions and injunctive action against Plaintiff for filing five exhibits with M.G.'s name. These documents were not new documents but prior exhibits. Defendant claims extensive and ongoing harm from the filing of these documents. Before the Court became aware of this Motion, Plaintiff had filed redacted versions of the offending documents. The Court finds this to be a reasonable resolution as it corrects the prior filings and eliminates any ongoing issues.

The Court will note that the decision on which Defendant relies does not impose sanctions or any retroactive obligations on the parties. It simply grants the motion to proceed with any reference to M.G. being limited to her initials. In reviewing this Order, the Court finds that there is room for confusion. Therefore, the Court cannot find as a matter of law that there was a Court order requiring the extensive redaction that Defendant seeks. Second, the Court also does not find that there is evidence of bad faith or malice in the filing. Both parties have filed multiple documents, and the documents at issue were previously filed in this case and have not been sealed.

Third, the mistake appears to be mutual as Defendant has filed at least two exhibits (BB and AI, page 11) that fail to redact M.G.'s name.

For these reasons, the Court **Denies** Defendant's motion for sanctions as it has largely become moot with the corrective filings. The Court will seal the original unredacted filings.

## ORDER

Based on the foregoing, the Court has ruled on the pending motions as follows:

1) The motion to allow jurors to submit questions is **Granted** (Motion #22).
2) The motion to allow a support person for M.G. is **Moot** as the relief sought does not require Court approval (Motion #23).
3) The motion for accommodation for M.G. is **Granted in Part** as to requests 1 and 2 and **Denied** as to requests (3) and (4). Request (5) is **Deferred** until trial. (Motion #24).
4) Plaintiff's first motion in limine is **Granted in part** in regard to Attorney Safar's testimony and any testimony regarding the inclusion of M.G. as a party and service of the complaint on her. It is **Denied in part** in regard to any request to outright bar M.G.'s testimony. (Motion #25).
5) Plaintiff's second motion in limine regarding her mental health history is **Granted.** (Motion # 26).
6) Defendant's motion to allow evidence of retaliatory conduct is **Denied** in regard to Categories (B) and (C) as both are inadmissible under V.R.E. 402 and 602. The Court declines to make any pre-trial ruling as to the admissibility of the facts under Category (A) or the documents in Category (D) without testimony and foundation, but it notes that duplicates are addressed under V.R.E. 1003. (Motion #27).
7) Defendant's motion to file M.G.'s medical records under seal is **Granted in part** as the Court will keep the records under seal, but the Court has concerns about the admissibility and relevance of these records in light of the remaining claims. As such, the parties shall address these exhibits with the Court at the pre-trial conference on October 27th. (Motion #28)
8) Defendant's Motion to Enforce is **Denied as Moot** in light of the redacted exhibits. The Court will put the originals under seal, and Defendant may file redacted versions of Exhibits BB and AI at which time the Court will put the originals under seal.

Electronically signed on 10/23/2025 12:21 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge